Daniel Sharp, Jr. and Ruth Sharp, his wife, Plaintiffs *v.* Commonwealth of Pennsylvania and William Sherlock, Secretary of Transportation, Defendants.

Argued February 3, 1977, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Harry Alan Sherman*, with him *R. Herb Buchman*, for plaintiffs.

*Richard S. Herskovitz,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendants.

OPINION BY JUDGE KRAMER, April 19, 1977:

This is an action in trespass commenced by Daniel Sharp and his wife against the Commonwealth of Pennsylvania and its Secretary of Transportation. Daniel Sharp was employed as a painter by the firm of Solomon & Teslovich, which firm was awarded the general contract for the painting of bridges on a Federal-State project on Interstate Highway 79. Due to an alleged negligence in the positioning of the scaffold upon which Sharp was working and an alleged failure to properly control traffic, Sharp was severely injured when the scaffold was stricken by a tractor-trailer truck attempting to pass beneath the bridge and scaffold. Sharp instituted the present suit along with his wife, who asserts a cause of action for loss of consortium. The case is presently before us on preliminary objections,[1] in the nature of a demurrer, filed by the Commonwealth and the Secretary of Transportation. The Commonwealth asserts sovereign immunity and the Secretary asserts absolute immunity as a "high public official."

Our analysis must begin with a statement of several basic propositions. First, Article I, Section 11,

---

[1] As is pointed out in the recent Pennsylvania Supreme Court decision in *Freach v. Commonwealth,* Pa. , A.2d (Nos. 356 and 357, January Term, 1976, filed February 28, 1977), immunity from suit is an affirmative defense which is properly raised under the heading "New Matter" in a responsive pleading; it is not properly raised by preliminary objections. *See* Pa. R.C.P. 1030. Since Plaintiffs did not object to the manner in which the issue of immunity was raised, we will, in the interest of judicial economy, decide the issue on the merits.

of the Pennsylvania Constitution has consistently been held to provide the Commonwealth with absolute immunity from suit in the absence of express legislative consent. *Brown v. Commonwealth,* 453 Pa. 566, 305 A.2d 868 (1973); *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 301 A.2d 849 (1973); *Schroeck v. Pennsylvania State Police,* 26 Pa. Commonwealth Ct. 41, 362 A.2d 486 (1976); *Poklemba v. Shamokin State General Hospital,* 21 Pa. Commonwealth Ct. 301, 344 A.2d 732 (1975). Second, common-law absolute immunity attaches to the actions of "high public officials" when acting within the scope of their authority and in the course of their official duties. *Schroeck, supra; Fischer v. Kassab,* 25 Pa. Commonwealth Ct. 593, 360 A.2d 809 (1976); *DuBree v. Commonwealth,* 8 Pa. Commonwealth Ct. 567, 303 A.2d 530 (1973). Third, the Secretary of Transportation is a "high public official." *Fischer v. Kassab, supra.*

Plaintiffs' attempts to breach this seemingly impenetrable wall of immunity are two: (1) the applicable federal statutes bar the defenses of soverign immunity in this case; (2) the Commonwealth and the Secretary have waived their immunities by contract and are estopped from raising them in this action in trespass.

The Plaintiffs' first argument raises initially the question of whether the Congress has the power to deprive a State and its officers of immunity from suit in *state courts.* The United States Supreme Court has never been presented this issue for decision. Almost invariably the Court has dealt with the issue of the immunity of the States and their officers from suit in *federal courts,* which brings into the Court's analyses the entangling web formed by the conjunction of sovereign immunity, Article III of the United States Constitution, the Eleventh Amendment and

the so-called "11½ Amendment."[2] *See, e.g., Fitzpatrick v. Bitzer,* 427 U.S. 445 (1976); *Edelman v. Jordan,* 415 U.S. 651 (1974); *Employees v. Department of Public Health and Welfare,* 411 U.S. 279 (1973); *Parden v. Terminal R. Co.,* 377 U.S. 184 (1964). In the context of a suit in a state court, one is dealing with the less complex, though perhaps no less difficult, question of whether the Congress may, in enacting legislation pursuant to those powers delegated to it or necessary and proper thereto, require the courts of a State to entertain suits against that State for vindication of rights created by federal legislation. Cast in these terms, the question appears to be readily resolved as a matter of federal supremacy. Indeed, Justice MARSHALL's concurring opinion in *Employees v. Department of Public Health and Welfare,* supra at 287-98, considers the question and gives an affirmative answer.[3] *See also, General Oil Co. v. Crane,* 209 U.S. 211 (1908). Fortunately, we need not decide the question of federal power, for we may dispose of this case by merely assuming that the Congress could constitutionally bar the States and their officers from asserting immunity in suits

---

[2] The judicially declared absence of jurisdiction of federal courts to entertain suits by a citizen against his own state in the absence of the state's consent. *Hans v. Louisiana,* 134 U.S. 1 (1890).

[3] It must be noted, however, that a negative answer or a qualified answer could easily be arrived at through application of the principles and analysis set forth in *National League of Cities v. Usery,* 426 U.S. 833 (1976). Certainly, sovereign immunity and the immunity of state officials can be viewed as involving the integrity of the States as sovereign political entities and their ability to effectively carry out governmental functions. A possible result of such analysis would be the conclusion that the Congress could bar the immunity defenses only when vulnerability of the State and its officials to suit in state courts is essential to the accomplishment of federal policy in areas of important or special national concern. *Cf. Fitzpatrick v. Bitzer, supra.*

in state courts arising out of activities within the sphere of legitimate federal regulation.

Assuming such power to exist, Plaintiffs would have this Court conclude that the Congress has exercised that power in the Department of Transportation Act,[4] the Federal-Aid Highway Act,[5] the Occupational Safety and Health Act of 1970[6] (OSHA), and the Contract Work Hours and Safety Standards Act.[7] We have examined each of these Acts closely and find that there simply is no basis for so concluding. First, none of the Acts create or provide for *any* cause of action in the private litigant. Second, only OSHA and the Contract Work Hours and Safety Standards Act provide for the promulgation of safety standards, and neither are made applicable to the States. OSHA imposes its standards upon "employers"[8] and it expressly excludes the States and their political subdivisions from the definition of "employer."[9] The Contract Work Hours and Safety Standards Act requires compliance with its standards only on the part of "contractors and subcontractors" on public work projects. No burden of compliance is placed directly upon the States. In the absence of some concrete manifestation of a Congressional intent to deprive the States and their officials of their immunity from suit, we will not infer that such was intended in the Acts presently before us. *See Employees v. Department of Public Health and Welfare, supra* at 284-85. Since these Acts disclose a Congressional decision not to place upon state government the primary responsibility for compliance with fed-

---

[4] 49 U.S.C.A. §1651 et seq.

[5] 23 U.S.C.A. §101 et seq.

[6] 29 U.S.C.A. §651 et seq.

[7] 40 U.S.C.A. §§327-333.

[8] 29 U.S.C.A. §654(a).

[9] 29 U.S.C.A. §652(5).

eral safety standards, we certainly cannot presume that Congress intended the States to be liable in damages for injuries resulting from failure to comply with said standards.

Plaintiffs' second argument is that the Commonwealth and the Secretary waived their respective immunities by including in the construction contract promises to comply with and enforce federal laws governing safety and health. Allegedly, the making of these promises was a precondition to the receipt of federal aid and the promises were drawn from a federal form entitled ''Required Contract Provisions All Federal-Aid Construction Contracts.''

There is little room for doubt that Congress could have conditioned its grant of aid upon a waiver by the Commonwealth and its officers of their immunities from tort claims arising out of the construction activities. *See Steward Machine Co. v. Davis,* 301 U.S. 548 (1937). Quite simply, however, the Congress has not done this. None of the Acts, previously discussed, condition aid to State highway projects upon any type of waiver of immunity. Again, we will not ascribe an intent to do so to the Congress when the Congress itself has been silent on the subject. *See Employees v. Department of Public Health and Welfare, supra* at 284-85. Moreover, we have examined the ''Required Contract Provisions All Federal-Aid Construction Contracts'' and we find that in each instance where a promise is made to comply with safety and health laws and standards such promise is made by the ''contractor or subcontractor.'' In fact then, it is the Commonwealth who, along with the federal government, is the victim of a breach of contract if the contractor or subcontractors fail to comply with safety standards. It would be perverse justice indeed for this Court to hold the Commonwealth or its officers estopped from asserting their immuni-

ties by a promise, subsequently broken, which was made *to* them and *not by* them.

In summary, we must conclude that neither federal law nor any waiver precludes the defendants from asserting immunity to this action in trespass. This being so, their preliminary objections must be sustained and this action dismissed.

ORDER

AND Now, this 19th day of April, 1977, the preliminary objections of the Commonwealth and of the Secretary of Transporation are hereby sustained and the complaint dismissed.